**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC, d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>               Plaintiff,<br><br>   v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>               Defendant. | Civil Action No. 6:20-cv-00727-ADA |

**DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY'S
MOTION TO DISMISS COMPLAINT FOR FAILURE TO
STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 1

II.     STATEMENT OF FACTS ............................................................................. 2

III.    LEGAL STANDARDS ................................................................................. 5

IV.     ARGUMENT ................................................................................................. 7

      A.   WSOU Fails to State a Claim for Direct Infringement.......................... 8

          1.   WSOU Failed to Plausibly Allege that the "processing means" Limitation Is Satisfied by the Accused Products ........................................ 8

          2.   WSOU Failed to Plausibly Allege That the "assigning" Limitation in Element (d) of the "processing means" Is Satisfied by the Accused Products ............................................................................... 12

      B.   WSOU Fails to State a Claim for Induced or Contributory Infringement ........... 14

          1.   WSOU's Indirect Infringement Claims Fail without Direct Infringement ................................................................................... 14

          2.   WSOU Fails to Allege the Requisite Knowledge for Indirect Infringement ................................................................................... 15

          3.   WSOU fails to Allege the Requisite Specific Intent for Induced Infringement ................................................................................... 16

V.      CONCLUSION ............................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
620 F. App'x 934 (Fed. Cir. 2015) ...................................................................7, 17

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*,
No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ...........................7, 16, 17

*Aguirre v. Powerchute Sports, LLC*,
No. SA-10-CV-0702 XR, 2011 WL 2471299 (W.D. Tex. June 17, 2011) ...........................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................1, 10, 13

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, LP.*,
304 F. Supp. 3d 587 (S.D. Tex. 2018), *as amended* (Apr. 20, 2018), *aff'd sub nom. Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, 757 F. App'x 1012 (Fed. Cir. 2019) ......................................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................1, 5

*Bowlby v. City of Aberdeen, Miss.*,
681 F.3d 215 (5th Cir. 2012) ...................................................................5

*Castlemorton Wireless, LLC v. Bose Corp.*,
6:20-cv-00029-ADA, Dkt. 51 (July 22, 2020)......................................................15

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
859 F.3d 1352 (Fed. Cir. 2017).................................................................16

*Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*,
958 F.3d 1348 (Fed. Cir. 2020).................................................................9

*Commil USA, LLC v. Cisco Sys., Inc.*,
135 S. Ct. 1920 (2015).......................................................................7, 14

*De La Vega v. Microsoft Corp.*,
2020 WL 3528411 (W.D. Tex. Feb. 11, 2020)....................................................5

*Diem LLC v. BigCommerce, Inc.*,
No. 6:17-CV-186-JRG-JDL, 2017 WL 9935521 (E.D. Tex. May 11, 2017)...........................5

*DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
No. CV 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018)..............................6

*DSU Med. Corp. v. JMS Co., Ltd.*,
    471 F.3d 1293 (Fed. Cir. 2006)............................................................................16

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004)............................................................................14

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
    909 F.3d 398 (Fed. Cir. 2018)..............................................................................6

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)...............................................................................................7

*Harris Corp. v. Ericsson Inc.*,
    417 F.3d 1241 (Fed. Cir. 2005)..............................................................................9

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984)..................................................................................................5

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
    870 F.3d 1320 (Fed. Cir. 2017)..............................................................................6

*In re Katz Interactive Call Processing Patent Litig.*,
    639 F.3d 1303 (Fed. Cir. 2011)..............................................................................9

*Neitzke v. Williams*,
    490 U.S. 319 (1989)...............................................................................................5

*Noah Sys., Inc. v. Intuit Inc.*,
    675 F.3d 1302 (Fed. Cir. 2012)..............................................................................8

*Parity Networks, LLC v. Cisco Sys., Inc.*,
    No. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019)............16

*Parus Holdings Inc. v. Apple Inc.*,
    No. 6:19-cv-432 ....................................................................................................15

*Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*,
    161 F.3d 696 (Fed. Cir. 1998)................................................................................8

*Qcue, Inc. v. Digonex Techs., Inc.*,
    No. A-12-CA-484-SS, 2013 WL 12121443 (W.D. Tex. Feb. 26, 2013)..........10, 13

*TeleSign Corp. v. Twilio, Inc.*,
    No. 16-cv-2106-PSG, 2016 WL 4703873 (C.D. Cal. Aug. 3, 2016)........................5

*VStream Techs., LLC v. PLR IP Holdings, LLC*,
    No. 6:15-cv-974-JRG-JDL, Dkt. 153, Ord. (E.D. Tex. Aug. 24, 2016) ..................6

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339 (Fed. Cir. 2015)................................................................................8

*WSOU Investments LLC, d/b/a Brazos Licensing and Development, v. Hewlett
   Packard Enterprise Co.*,
   Case No. 6:20-cv-00783 (W.D. Tex. 2020).............................................................2

*WSOU Investments LLC, d/b/a Brazos Licensing and Development, v. Hewlett
   Packard Enterprise Co.*,
   Case Nos. 6:20-cv-00725, 6:20-cv-00726, 6:20-cv-00727, 6:20-cv-00728,
   6:20-cv-00729, and 6:20-cv-00730 (W.D. Tex. 2020) .............................................2

*ZitoVault, LLC v. Int'l Bus. Machs. Corp.*,
   No. 3:16-cv-0962, 2018 WL 2971131 (N.D. Tex. Mar. 29, 2018)..........................13

I.    **INTRODUCTION**

Plaintiff WSOU Investments, LLC's ("WSOU") complaint fails to meet the pleading requirements of Federal Rule of Civil Procedure 12(b)(6) and should therefore be dismissed.

To state a claim for patent infringement, a complaint must plead sufficient facts to plausibly suggest that an accused product meets each limitation of at least one asserted claim. Doing so requires more than merely parroting the claim language and making a conclusory statement that the accused product satisfies it; such assertions must instead be supported by plausible factual allegations that show *how* the accused product purportedly infringes. This requires a limitation-by-limitation analysis of each element of a claim listed in a complaint. Claim limitations written in means-plus-function format require that the Accused Products include both (1) the claimed function *and* (2) its corresponding structure from the specification. Accordingly, a complaint asserting a means-plus-function claim must plead facts sufficient to support the inference that an accused product meets these requirements.

WSOU's complaint fails to plausibly allege that all elements Claim 1 of U.S. Patent No. 7,443,832 (a means-plus-function claim) are satisfied. Indeed, the complaint does not even take the first step toward that goal, because it fails even to attempt to identify the corresponding structure for the "processing means" limitation, much less to find that structure in an accused product. The conclusory assertion that a means-plus-function claim is infringed, without any attempt to show that the corresponding structure is found in the Accused Products or even any acknowledgment of what the corresponding structure may be, falls far short of the pleading requirements set in *Iqbal* and *Twombly*. Even setting aside the failure to address corresponding structure, the complaint is further deficient because it pleads no facts whatsoever in support of its assertion that any accused product practices the claimed "assigning" function. The failure to adequately plead direct infringement by others also dooms WSOU's claims for indirect

infringement. WSOU's indirect infringement claim also fails because it does not allege HPE had pre-suit knowledge of the Asserted Patent, nor does it plead the requisite specific intent for inducement. Accordingly, Defendant Hewlett Packard Enterprise Company ("HPE") respectfully requests that the Court dismiss this action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.   STATEMENT OF FACTS

On August 12, 2020, WSOU filed six lawsuits against HPE in this District, each of which accuses HPE of infringing a single patent. *See WSOU Investments LLC, d/b/a Brazos Licensing and Development, v. Hewlett Packard Enterprise Co.*, Case Nos. 6:20-cv-00725, 6:20-cv-00726, 6:20-cv-00727, 6:20-cv-00728, 6:20-cv-00729, and 6:20-cv-00730 (W.D. Tex. 2020). WSOU added a seventh lawsuit two weeks later on August 26, 2020, also asserting a single patent. *See WSOU Investments LLC, d/b/a Brazos Licensing and Development, v. Hewlett Packard Enterprise Co.*, Case No. 6:20-cv-00783 (W.D. Tex. 2020). WSOU has filed over 100 similar suits in this District since March of this year.

In the present suit (6:20-cv-00727-ADA), WSOU alleges infringement of U.S. Patent No. 7,443,832 (the "'832 patent" or the "Asserted Patent"). Dkt. 1 at ¶¶ 17–39. Specifically, WSOU alleges that HPE directly or indirectly infringes the Asserted Patent because it "makes, uses, sells, offers for sale, imports, and/or distributes" products including the "HPE HSR6800 Router Series, HPE A880 Router Series, and the HPE 5820X Switch Series" which it refers to as the "Accused Products." Claim 1, the only independent claim of the patent and the only claim mentioned in the complaint, is an apparatus claim directed to a type of switch. '832 patent, Cl. 1. As detailed below, that claim is written in means-plus-function format, reciting, among other things, "a processing means for" performing associated functions:

1. A device for determining labeled data stream switchpath(s) in a label switched communication network comprising a multiplicity of label switched routers (LSR), each stream being associated with a chosen forwarding equivalence class and with a chosen set of service data, which device comprises:

a memory means for

> storing a table of correspondences between sets of service data and information data representative of at least two chosen criteria and a descriptive structure containing information data representative of a state of utilization and of a topology of the network, and

**a processing means for**:

> a) receiving a path set-up request containing a set of service data associated with a stream to be switched, and for determining in said table at least two criteria stored in corresponding relationship to said set of service data associated with the stream,

> b) ensuring the connectivity of said multiplicity of label switched routers, on the basis of information data stored in said descriptive structure,

> c) calculating from among said label switch routers possible paths between a departure node and a destination node taking account of at least one of said two criteria that have been determined and then deducing an ideal solution from performances of said possible paths on at least one of said criteria,

> d) assigning each possible path an interest value taking account of said ideal solution and then classifying said possible paths taking account their respective interest values, and

> e) selecting a path from among said classified possible paths and then associating with said stream to be switched a label representative of said selected path so that said labeled stream is switched via said path to the destination node.

'832 patent, Cl. 1 (emphasis added).

WSOU's complaint does not attempt to identify any structure in the specification of the '832 patent that might correspond to the means recited in this claim. The complaint also does not point to any structure in the Accused Products as purportedly corresponding to the claimed means. Instead, the complaint contains various conclusory statements and assertions that the

claim is satisfied. For example, paragraph 24 of the complaint simply parrots the language of Claim 1 and alleges that each Accused Product meets it:

| Claim 1 | Complaint – Paragraph 24 |
| --- | --- |
|  | 24: Each of the Accused Products is a device … which device comprises: |
| a processing means for: | processing means for: |
| a) receiving a path set-up request containing a set of service data associated with a stream to be switched, and for determining in said table at least two criteria stored in corresponding relationship to said set of service data associated with the stream; | a) receiving a path set-up request containing a set of service data associated with a stream to be switched, and for determining in said table at least two criteria stored in corresponding relationship to said set of service data associated with the stream; |
| b) ensuring the connectivity of said multiplicity of label switched routers, on the basis of information data stored in said descriptive structure; | b) ensuring the connectivity of said multiplicity of label switched routers, on the basis of information data stored in said descriptive structure; |
| c) calculating from among said label switch routers possible paths between a departure node and a destination node taking account of at least one of said two criteria that have been determined and then deducing an ideal solution from performances of said possible paths on at least one of said criteria; | c) calculating from among said label switch routers possible paths between a departure node and a destination node taking account of at least one of said two criteria that have been determined and then deducing an ideal solution from performances of said possible paths on at least one of said criteria; |
| d) assigning each possible path an interest value taking account of said ideal solution and then classifying said possible paths taking account of their respective interest values; and, | d) assigning each possible path an interest value taking account of said ideal solution and then classifying said possible paths taking account of their respective interest values; and, |
| e) selecting a path from among said classified possible paths and then associating with said stream to be switched to a label representative of said selected path so that said labeled stream is switched via said path to the destination node. | e) selecting a path from among said classified possible paths and then associating with said stream to be switched to a label representative of said selected path so that said labeled stream is switched via said path to the destination node. |

### III.    LEGAL STANDARDS

A complaint should be dismissed under Federal Rule of Civil Procedure Rule 12(b)(6) when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original) ("*Twombly*"). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012). A complaint that alleges facts merely consistent with liability "stops short of the line between possibility and plausibility" and should be dismissed. *Twombly*, 550 U.S. at 546.

A complaint is "insufficient if it offers only 'labels and conclusions,' or a 'formulaic recitation of the elements of a cause of action.'" *Bowlby*, 681 F.3d at 219 (quoting *Twombly*, 550 U.S. at 555). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Accordingly, if well-pleaded facts still do not state a cognizable theory as a matter of law, dismissal pursuant to Rule 12(b)(6) is warranted.

In a patent suit, a complaint must plead facts that describe *how* the allegedly infringing product infringes. *See De La Vega v. Microsoft Corp*., 2020 WL 3528411, at *6–7 (W.D. Tex. Feb. 11, 2020). Thus, the complaint must "provid[e] facts sufficient to create a plausible inference that each element of the claim [of the patent] is infringed by the accused products." *Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-186-JRG-JDL, 2017 WL 9935521, at *2 (E.D. Tex. May 11, 2017) (emphasis added); *see also TeleSign Corp. v. Twilio, Inc.*, No. 16-cv-2106-PSG, 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016) ("[I]n the post-Form 18 world, a plaintiff must include allegations sufficient to 'permit [the] court to infer that the accused product infringes each element of at least one claim'") (internal quotations omitted) (alteration omitted).

It is not enough to merely identify the accused products and state that they infringe the asserted claim; rather, the "key to patent infringement is … identifying how those products allegedly infringe the Asserted Patent claims." *VStream Techs., LLC v. PLR IP Holdings, LLC*, No. 6:15-cv-974-JRG-JDL, Dkt. 153, Ord. at 7 (E.D. Tex. Aug. 24, 2016) (emphasis added); *see also DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.,* No. CV 18-098 (MN), 2018 WL 6629709, at *2 (D. Del. Dec. 19, 2018) (citation omitted) ("[T]o state a claim of direct infringement sufficient to withstand a motion to dismiss, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim(s).").

Under pre-America Invents Act 35 U.S.C. § 112, paragraph 6, a claim element "may be expressed as a means or step for performing a specified function" without reciting a corresponding structure. 35 U.S.C. § 112 (2006). In such cases, the claim is construed "to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *Id*.; *see also* 35 U.S.C. § 112(f) (2018) (current version of statute, with identical language). Thus, the corresponding structure is effectively a part of the claim limitation. A complaint asserting a means-plus-function claim therefore requires (1) identification of the relevant structure in the specification, and (2) plausible allegations that the product embodies the structure or an equivalent.

To plead indirect infringement, the complaint must first plead direct infringement. *See Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1331 (Fed. Cir. 2017) ("A finding of direct infringement is predicate to any finding of indirect infringement[.]"); *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 407 (Fed. Cir. 2018) (same). For both induced and contributory infringement, a plaintiff must also plead facts to support an inference of a defendant's "knowledge of the patent in suit and knowledge of patent

infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015); *see*

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015).

For induced infringement, a plaintiff must also plead facts showing that each defendant

"had [a] specific intent to induce the [third party's] patent infringement." *Affinity Labs of Texas,*

*LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *2 (W.D. Tex. May 12,

2014). The "specific intent" element is "demanding" and requires more than "unsubstantiated

assertions" or "generalized allegations" as to the intent of the alleged infringer. *Id.* at *7–*8.

Specific intent requires more than knowledge of the induced acts; rather, the accused infringer

must have "knowledge that the induced acts constitute patent infringement." *Global-Tech*

*Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

## IV.    ARGUMENT

WSOU's complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) because it fails to

plausibly plead each and every element of its infringement claim. Although WSOU's complaint

contains a conclusory statement that "each and every element of at least claim 1 of the '832

patent" is satisfied, Dkt. 1, ¶ 32, the only paragraphs that purport to recite factual allegations

relating to Claim 1 are paragraphs 21–31. Those paragraphs fail to adequately state facts that, if

true, would show that the Accused Products (1) satisfy the structural aspects of the "processing

means" limitation at all, or (2) satisfy the functions recited in part "(d)" of the "processing

means" limitation. The complaint therefore fails to support its conclusory assertion of direct

infringement with plausible factual allegations, and this failure wipes out WSOU's claims for

indirect infringement as well because direct infringement is a necessary predicate to prove active

inducement of infringement and contributory infringement. WSOU's indirect infringement

claims cannot survive for multiple other reasons as well.

### A.     WSOU Fails to State a Claim for Direct Infringement

#### 1.     WSOU Failed to Plausibly Allege that the "processing means" Limitation Is Satisfied by the Accused Products

A mean-plus-function claim recites purely functional language, while referring back to the specification to identify the corresponding structure. *See* 35 U.S.C. § 112(6). The scope of a means-plus-function cannot be determined from the claim alone; rather, that inquiry requires identifying a structure in the specification that corresponds to the purely functional language. *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012). That structure and its equivalents are part of the claim itself, and a product can only infringe the claim if it possesses that structure or its equivalent. *Id*. Therefore, to plausibly allege infringement of Claim 1, WSOU must (1) identify a structure in the specification that it alleges corresponds to the function of Claim 1, and (2) allege that some structure in the Accused Products is the identified structure or its equivalent. WSOU has failed to do either.

#### a.     Claim 1 Is a Means-Plus-Function Claim

As a threshold matter, when a claim recites the word "means" (as Claim 1 does here), it "creates a rebuttable presumption that § 112, para. 6 applies" and that the claim is therefore written in means-plus-function format. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015). That presumption can be overcome if the claim nevertheless recites "sufficiently definite structure" for performing the claimed function. *Id.* at 1348–49; *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 703–04 (Fed. Cir. 1998). The essential inquiry is "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson,* 792 F.3d 1339 at 1349.

In this case, the body of Claim 1 uses of the word "means" in the phrase "processing means," and thus creates a presumption that the claim is written in means-plus-function format. That presumption cannot be overcome here, because Claim 1 recites no structure that gives definite meaning to the "processing means" for performing the claimed functions. In fact, the claim recites no structure at all associated with the functions of that term. Courts have routinely held that claim limitations reciting the term "processing means" or the like are means-plus-function limitations. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1315 (Fed. Cir. 2011) ("processing means" held to be means-plus-function term); *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241 (Fed. Cir. 2005) (same); *Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*, 958 F.3d 1348, 1359–60 (Fed. Cir. 2020) ("signal processing means" held to be means-plus-function term); *Auto-Dril, Inc. v. Nat'l Oilwell Varco, LP.*, 304 F. Supp. 3d 587, 617 (S.D. Tex. 2018), *as amended* (Apr. 20, 2018), *aff'd sub nom. Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, 757 F. App'x 1012 (Fed. Cir. 2019) ("computer data and program processing means" held to be means-plus-function term).

### b.  The Complaint Identifies No Structure in the Specification Corresponding to "processing means"

The complaint fails to identify any structure in the specification corresponding to the "processing means" recited in the claim. In fact, it engages in no analysis of the specification of the '832 patent at all—the complaint is devoid of any *mention* of the specification. The failure to identify such a structure is fatal to WSOU's complaint, as the corresponding structure (to the extent one exists) or its equivalent must be present in the Accused Products to satisfy the claim. For that reason, the complaint fails to plausibly state a claim for infringement.

      **c.**    **The Complaint Identifies No Structure in the Accused Products Corresponding to "processing means"**

Compounding its failure to identify a structure in the specification that corresponds to the "processing means," the complaint also makes no effort to point to anything in the Accused Products as the accused structure for this limitation. As explained above, paragraph 24 of the complaint simply parrots the claim language associated with the processing means and alleges it is satisfied by the Accused Products. Dkt. 1 at ¶ 24. Such allegations amount to nothing more than legal conclusions and therefore need not be accepted as true. *Qcue, Inc. v. Digonex Techs., Inc.*, No. A-12-CA-484-SS, 2013 WL 12121443, at *2 (W.D. Tex. Feb. 26, 2013) ("a court is not bound to accept legal conclusions couched as factual allegations"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). This paragraph therefore cannot plausibly allege that "processing means" claim element is satisfied.

Paragraphs 27–31 then purport to show how each of the five functions associated with the processing means are satisfied:

| Claim 1 | Complaint – Paragraphs 27–31 |
| --- | --- |
| a processing means for: <br><br> a) receiving a path set-up request containing a set of service data associated with a stream to be switched, and for determining in said table at least two criteria stored in corresponding relationship to said set of service data associated with the stream; | 27: Each of the Accused Products includes <br><br> a processing means for <br><br> receiving a path set-up request containing a set of service data associated with a stream to be switched, and for determining in said table at least two criteria stored in corresponding relationship to said set of service data associated with the stream |

| Claim 1 | Complaint – Paragraphs 27–31 |
|---|---|
| b) ensuring the connectivity of said multiplicity of label switched routers, on the basis of information data stored in said descriptive structure; | 28: The processing means of the Accused Products<br><br>ensures the connectivity of said multiplicity of label switched routers, on the basis of information data stored in the descriptive structure |
| c) calculating from among said label switch routers possible paths between a departure node and a destination node taking account of at least one of said two criteria that have been determined and then deducing an ideal solution from performances of said possible paths on at least one of said criteria; | 29: The processing means of the Accused Products<br><br>calculates the possible paths between a departure node and a destination node from among the label switched routers, taking account of at least one of said two criteria that have been determined and then deducing an ideal solution from performances of said possible paths on at least one of said criteria. |
| d) assigning each possible path an interest value taking account of said ideal solution and then classifying said possible paths taking account of their respective interest values; and, | 30: The processing means of the Accused Products<br><br>assigns each possible path an interest value taking account of the ideal solution and then classifying the possible paths taking account their respective interest values. |
| e) selecting a path from among said classified possible paths and then associating with said stream to be switched to a label representative of said selected path so that said labeled stream is switched via said path to the destination node. | 31: The processing means of the Accused Products<br><br>selects a path from among the classified possible paths and then associates with the stream to be switched to a label representative of the selected path so that the labeled stream is switched via said path to the destination node. |

11

Dkt. 1, ¶¶ 27–31. All of the allegations in those paragraphs describe the alleged *functions* carried out by the "processing means." None of them identifies a *structure* in the Accused Products, much less one that putatively embodies the (unspecified) corresponding structure of the '832 patent specification. WSOU's failure to identify such structure renders its complaint fatally deficient for failing to plausibly allege that each and every element of Claim 1 is satisfied.

> **2.      WSOU Failed to Plausibly Allege That the "assigning" Limitation in Element (d) of the "processing means" Is Satisfied by the Accused Products**

Apart from its deficiencies in identifying corresponding structure, WSOU's complaint also omits pleading any facts that the claimed *function* is satisfied for at least one element. Part (d) of the "processing means" portion of the claim recites a function that begins with "assigning" certain paths. WSOU's complaint pleads no facts in support of the legal conclusion that the Accused Products perform part (d) of the functions of the "processing means." The only paragraphs that mention part (d) do nothing more than parrot the claim language and assert the accused products satisfy it:

| Claim 1 | Complaint – Paragraphs 24 and 30 |
|---|---|
| a processing means for …<br><br>d) assigning each possible path an interest value taking account of said ideal solution and then classifying said possible paths taking account their respective interest values, and | 24: Each of the Accused Products is a device for …<br><br>d) assigning each possible path an interest value taking account of said ideal solution and then classifying said possible paths taking account of their respective interest values; and<br><br>30: The processing means of the Accused Products assigns each possible path an interest value taking account of the ideal solution and then classifying the possible |

| Claim 1 | Complaint – Paragraphs 24 and 30 |
|---|---|
| | paths taking account their respective interest values. |

Dkt. 1 at ¶¶ 24, 30. Such allegations amount to nothing more than legal conclusions and need not be accepted as true. *Qcue*, 2013 WL 12121443, at *2; *Iqbal*, 556 U.S. at 678.

Even going beyond the pleading itself and looking to its cited documentation sheds no light on what the putative infringement theory is.[1] The only cited support for WSOU's allegation regarding the part (d) function appears in footnote 33, which merely reads "*Id.*" That reference apparently is intended to relate back to footnote 30, which consists solely of a citation to a website containing a configuration guide for the HPE FlexNetwork HSR6800 Routers: "*See* https://support.hpe.com/hpsc/doc/public/display?docId=c04093643 at 71." Dkt. 1, n.30. It is unclear how the information on that page of the guide could possibly satisfy the claim limitation, as it makes no mention of an "interest value" or "ideal solution" that the claim requires. Moreover, it is not HPE's duty to speculate on what WSOU may have meant to accuse by citing this website; it is WSOU's duty to adequately spell out its allegation in the complaint itself. The mere repetition of claim language, unsupported by any factual allegations, does not state a plausible claim for relief. For at least this reason, the complaint fails to meet the requirement to

---

[1] On a motion to dismiss, the Court may "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See ZitoVault, LLC v. Int'l Bus. Machs. Corp.*, No. 3:16-cv-0962, 2018 WL 2971131, at *2 n.4 (N.D. Tex. Mar. 29, 2018).

plausibly allege infringement of each element of at least one claim of the '832 patent, and should therefore be dismissed.

**B.      WSOU Fails to State a Claim for Induced or Contributory Infringement**

WSOU's indirect infringement claims are deficient and should be dismissed. As an initial matter, WSOU's failure to plausibly allege direct infringement precludes its claims of induced and contributory infringement. Furthermore, WSOU identifies no third party that allegedly directly infringes, as required in a claim for contributory or induced infringement. Beyond those shortcomings, WSOU has failed to plead any knowledge by HPE of the patent, or knowledge by HPE of alleged infringement, ***prior*** to the filing of this action. WSOU also fails to plead a specific intent to induce infringement. Each of these failures independently warrants dismissal of WSOU's indirect infringement allegations.

**1.      WSOU's Indirect Infringement Claims Fail without Direct Infringement**

WSOU's indirect infringement allegations are insufficient as a matter of law, as WSOU fails to plausibly allege direct infringement by HPE given the failings of its means-plus-function allegations, *see supra* § IV.A, much less direct infringement by a third-party. Its complaint names no such specific third-party, Dkt. 1 at ¶¶ 35–36, and, regardless, the same failings of its means-plus-function allegations would apply to the third-party too. It is axiomatic that indirect infringement requires direct infringement by another as a predicate. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement … ."). As a result, WSOU has also failed to adequately plead its claims of induced and contributory infringement and these claims should be dismissed.

### 2.    WSOU Fails to Allege the Requisite Knowledge for Indirect Infringement

WSOU's indirect infringement allegations fail because they do not plead the required "knowledge of the patent in suit and knowledge of patent infringement." *Commil*, 135 S. Ct. at 1926. As courts in this District have held, the knowledge requirement for indirect infringement require **pre-suit** knowledge. *See Castlemorton Wireless, LLC v. Bose Corp.*, 6:20-cv-00029-ADA, Dkt. 51 at 11 (July 22, 2020) (Order attached as Exhibit 2); *see also Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (holding that reliance "on knowledge of [plaintiff's] patent after the lawsuit was filed . . . is insufficient to plead the requisite knowledge for indirect infringement").

Despite this clear requirement, WSOU's sole allegation of knowledge of the patent is a conclusory statement that "HPE has received notice and actual or constructive knowledge of the '832 Patent **since at least the date of service of this Complaint**." Dkt. 1 at ¶ 34 (emphasis added).[2] This Court has rejected materially identical allegations of knowledge. For example, in *Parus*, this Court dismissed indirect infringement claims where plaintiff's only allegation of knowledge of the patent was that "Defendant Apple has had knowledge of the '431 Patent **since at least the filing of the original complaint**." *See Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432, at Dkt. 28 (Amended Compl.) at ¶ 44 (emphasis added) (attached as Exhibit 3); *see id.* at

---

[2] WSOU's allegation of knowledge of infringement is likewise deficient, as WSOU alleges such knowledge only "[s]ince at least the date of service of this Complaint." Dkt. 1 at ¶ 35; *see, e.g.*, Exhibit 1, *Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432, Feb. 20, 2020 Text Order Granting Dkt. 54 (W.D. Tex. Feb. 20, 2020) (dismissing indirect infringement claims where the only allegations of knowledge of infringement were that "[b]y the time of trial, Defendant Apple will have known and intended (since receiving such notice) that their continued actions would actively induce the infringement of the claims of the '431 Patent."); *id.*, Dkt. 28 at ¶ 44 (Amended Compl.) (attached as Exhibit 3).

Feb. 20, 2020 Text Order GRANTING D.I. 54 (W.D. Tex. Feb. 20, 2020) (dismissing indirect infringement claims) (Order attached as Exhibit 1). Like the allegations in *Parus*, WSOU fails to allege pre-suit knowledge and thus fails to state a claim for indirect infringement. *See id.*; *see also* Ex. 2, *Castlemorton Wireless, LLC v. Bose Corp.*, 6:20-cv-00029-ADA, Dkt. 51 at 11 (July 22, 2020) ("Because Castlemorton's complaint does not plead any facts that would support an allegation of pre-suit knowledge, the Court **GRANTS** Bose's motion to dismiss Castlemorton's indirect infringement claims."). WSOU's induced and contributory infringement claims should be dismissed for this additional, independent reason.

### 3.   WSOU fails to Allege the Requisite Specific Intent for Induced Infringement

WSOU also fails to plead specific intent in support of its inducement claim. Allegations of specific intent require factual "'evidence of culpable conduct, ***directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities***.'" *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019) (quoting *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (emphasis added)). WSOU's allegations of specific intent amount to a single conclusory statement that HPE "actively induced" others to infringe through their advertising, product descriptions, operating manuals and other instructions, and four website citations. *See* Dkt. 1, ¶ 35. But, critically, WSOU alleges no facts that suggest any connection between HPE ***encouraging its customers to generally use the Accused Products*** and their direct infringement, much less an intent to have HPE's customers directly infringe. In order to plausibly plead induced infringement, the law requires a showing that HPE induced someone to perform ***all of the steps that constitute infringement***. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1364 (Fed. Cir. 2017) ("The mere knowledge of possible

infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven."); *see also Affinity Labs of Tex., LLC v. Toyota Motor N. Am., Inc.*, No. 13-365-WSS, 2014 WL 2892285, at *7 (W.D. Tex. May 12, 2014) (dismissing induced infringement claims where "Plaintiff does not specify how the marketing and selling activities of Toyota actually induced third-parties to infringe the Asserted Patents. The complaint generally alleges that Toyota induced its customers to purchase its vehicles, but fails to allege how Toyota induced its customers to use the vehicles in a manner that would violate the Asserted Patents.").

WSOU's conclusory allegations fail to present facts that demonstrate: (1) HPE knew that the alleged acts would infringe, and (2) HPE knew that the promotion of their products would induce or encourage others to infringe the Asserted Patent. *See Addiction*, 620 F. App'x at 938 ("[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent" fails to plead "facts that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement."); *Affinity Labs*, 2014 WL 2892285, at *7, *8 (finding "Plaintiffs generalized allegations that Toyota induced others to infringe the Asserted Patents through its marketing and sales tactics are [] insufficient.").

WSOU's inducement claim should be dismissed because the Complaint is entirely silent on a key requirement of induced infringement.

## V.     CONCLUSION

WSOU has failed to assert plausible allegations of infringement against HPE. Accordingly, HPE respectfully requests that the Court dismiss the complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

17

Date: October 23, 2020

Respectfully submitted,

By: */s/ Barry K. Shelton*

Barry K. Shelton
Texas State Bar No. 24055029
SHELTON COBURN LLP
311 RR 620, Suite 205
Austin, TX 78734-4775
Telephone: (512) 263-2165
Facsimile: (512) 263-2166
bshelton@sheltoncoburn.com

**ATTORNEYS FOR DEFENDANT
HEWLETT PACKARD ENTERPRISE
COMPANY**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system pursuant to Local Rule CV-5(b)(1).

*/s/ Barry K. Shelton*
Barry K. Shelton