UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

WSOU INVESTMENTS, LLC d/b/a
BRAZOS LICENSING AND DEVELOPMENT,

        Plaintiff,

v.

HEWLETT PACKARD ENTERPRISE COMPANY AND
NEW H3C TECHNOLOGIES CO. LTD.,

        Defendants.

Civil Action No. 6:20-cv-00727-ADA

JURY TRIAL DEMANDED

## BRAZOS'S SECOND AMENDED COMPLAINT AGAINST HPE AND H3C FOR INFRINGEMENT OF U.S. PATENT NO. 7,444,832

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos"), by and through its attorneys, files this First Amended Complaint for Patent Infringement against defendant Hewlett Packard Enterprise Company ("HPE") and New H3C Technologies Co., Ltd. ("H3C") (collectively, "Defendants"), and alleges:

### NATURE OF THE ACTION

1.      This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, including §§ 271, 281, 284, and 285.

2.      Brazos alleges that Defendants infringe U.S. Patent No. 7,444,832 ("the '832 Patent"). Brazos seeks damages and other relief for their infringement of the '832 Patent.

### THE PARTIES

3.      Brazos is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

4.      Upon information and belief, HPE is a corporation organized and existing under the laws of Delaware, with a regular and established place of business located at 14231 Tandem Boulevard, Austin, Texas 78728. HPE may be served through its designated agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas, 75201.

5.      Upon information and belief, H3C is a corporation formed under the laws of China with a principal place of business at Tower 1, LSH Center, 8 Guangshun South Street, Chaoyang District, Beijing 100102 China. H3C is a provider of digital solutions ranging from digital infrastructure products to digital platforms and end-to-end technical services.

6.      HPE has a "unique partnership" with H3C in which it owns a 49 percent stake in H3C.[1]

7.      HPE has commercial arrangements with H3C to buy and sell HPE branded servers, storage, and networking products. During FY 2020, 2019 and 2018, HPE recorded approximately $737 million, $897 million and $1.3 billion of sales to H3C and $215 million, $202 million and $273 million of purchases from H3C, respectively. Payables due to H3C as of October 31, 2020 and 2019 were approximately $29 million and $39 million, respectively. Receivables due from H3C as of October 31, 2020 and 2019 were approximately $19 million and $32 million, respectively.[2]

---

[1] https://www.hpe.com/us/en/newsroom/press-release/2019/09/hewlett-packard-enterprise-new-h3c-delivers-double-digit-market-share-and-attains-number-one-position-in-second-quarter-of-2019-worldwide-server-revenue-tracker.html; *see also* https://www.sec.gov/ix?doc=/Archives/edgar/data/1645590/000164559020000056/hpe-20201031.htm at 49.

[2] *See* https://www.sec.gov/ix?doc=/Archives/edgar/data/1645590/000164559020000056/hpe-20201031.htm at 138.

<u>**JURISDICTION AND VENUE**</u>

8.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over both Defendants.  Upon information and belief, Defendants, directly and/or through intermediaries, regularly conduct business and have committed acts of patent infringement, and/or have induced acts of patent infringement by others in this Judicial District and/or have contributed to patent infringement by others in this Judicial District, the State of Texas elsewhere in the United States. The Court's exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice because Defendants have established minimum contacts with the forum with respect to both general and specific personal jurisdiction and have purposefully availed themselves of the privilege of doing business within this District such that they should reasonably and fairly anticipate being brought into court here.

10.     This Court has general and specific jurisdiction over HPE. Upon information and belief, HPE has continuous and systematic business contacts with the State of Texas. HPE is registered to do business in the State of Texas, has offices and facilities in the State of Texas, and actively directs its activities to customers located in the State of Texas. HPE, directly and/or through affiliates and/or intermediaries, conducts its business extensively throughout Texas, by shipping, importing, manufacturing, distributing, offering for sale, selling, and/or advertising its products and services in the State of Texas and this Judicial District. Upon information and belief, HPE is subject to the Court's specific jurisdiction by, among other things, directly or indirectly, making, using, offering to sell, and/or selling in the State of Texas and this Judicial District and/or importing into the State of Texas and this Judicial District infringing products.

11.     Upon information and belief, Defendants, directly or through intermediaries, participate in the stream of commerce that, with their knowledge, results in infringing products being made, used, offered for sale, and/or sold in the State of Texas and/or imported into the United States to the State of Texas, including through retailers, distributors, and/or authorized dealers and sales agents in Texas and this Judicial District. Upon information and belief, Defendants, directly or through intermediaries, derive revenues from their infringing acts and the infringing acts of others occurring within the State of Texas and in this Judicial District. Additionally, Defendants, directly or through intermediaries, provide service and support to their customers in the State of Texas and this Judicial District.

12.     In addition, or in the alternative, this Court has personal jurisdiction over H3C under Federal Rule of Civil Procedure 4(k)(2) because H3C is not subject to jurisdiction with respect to claims in this complaint in any other state's courts of general jurisdiction and exercising jurisdiction over H3C is consistent with the United States Constitution and laws because H3C has established minimum contacts with the United States as a whole.

13.     Venue is proper over defendant H3C in this Court pursuant to 28 U.S.C. § 1391 because, among other things, defendant H3C is a foreign defendant and not a resident in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

14.     Venue is proper over HPE in this Court pursuant to 28 U.S.C. § 1400(b) because HPE is registered to do business in Texas, and, upon information and belief, HPE has offices in this Judicial District, HPE has transacted business in this Judicial District, and has committed acts of direct and indirect infringement in this Judicial District by, among other things, making, using, distributing, installing, configuring, importing, offering to sell, and selling products that

infringe the Asserted Patent. HPE has regular and established places of business in this Judicial

District, as set forth below.

15.    HPE maintains a regular and established place of business in this Judicial District,

at least at 14231 Tandem Boulevard, Austin, Texas 78728:[3,4]



16.    Upon information and belief, HPE conducts business and serves customers from

its regular and established place of business in Austin, Texas, in this District. Upon information

and belief, HPE's Austin office is located on a 52-acre campus.[5]

17.    In October 2019, it was reported that HPE signed a lease for a 27,326-square-

foot-space in a 164,714-square-foot office building in North Austin at Paloma Ridge, located at

13620 FM 620 Austin, Texas, 78717.[6]

---

[3] *See* https://www.hpe.com/us/en/contact-hpe.html.

[4] *See* https://goo.gl/maps/mojArn1WxaHcHU8v8; *see also* https://goo.gl/maps/cBjm1De4gVPFMeam9.

[5] *See* https://www2.colliers.com/en/properties/austin-continuum/USA-14231-tandem-boulevard-austin-tx-78728/usa1046778.

[6] *See* https://communityimpact.com/local-news/austin/leander-cedar-park/coming-soon/2019/10/23/hewlett-packard-signs-lease-at-paloma-ridge-on-fm-620/.

18.     Upon information and belief, HPE owns at least two properties in Austin, Texas, in this District.[7]

19.     HPE maintains additional regular and established places of business in the State of Texas, nearby to this District, including at 11445 Compaq Center West Drive Houston, Texas, 77070, and 6080 Tennyson Parkway, Suite 400, Plano, Texas 75024.[8]

20.     HPE's website states that HPE is "a global edge-to-cloud Platform-as-a-Service company . . . that helps customers connect, protect, analyze, and act on all [of the customer's] data and applications wherever they live . . . ."[9] Upon information and belief, HPE designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States products that infringe the Asserted Patent, directly and or through intermediaries, as alleged herein. HPE markets, sells, and/or offers to sell its products and services, including those accused herein of infringement, to actual and potential customers and end-users located in Texas and in this District, as alleged herein.

21.     HPE's website permits customers to configure and customize HPE products, including the HPE HSR6800 Router Series, HPE A880 Router Series, and the HPE 5820X Switch Series, and request prices quote from HPE on the configured products.[10] HPE's website also permits users to purchase HPE products directly from HPE's website.[11]

---

[7] *See* http://propaccess.traviscad.org/clientdb/SearchResults.aspx (printout attached as Exhibit B).

[8] *See* https://www.hpe.com/us/en/contact-hpe.html.

[9] *See* https://www.hpe.com/us/en/about.html.

[10] *See, e.g.*, https://h22174.www2.hpe.com/SimplifiedConfig/Welcome (printout attached as Exhibit C).

[11] *See, e.g.*, https://buy.hpe.com/us/en/networking/routers/c/4172265; https://buy.hpe.com/us/en/networking/networking-switches/c/c001013.

22.     Upon information and belief, HPE offers trainings and/or certifications to HPE partners, customers, and HPE employees including, *inter alia*, trainings and certifications regarding the sales and/or service of HPE products, including products designed and developed, in whole or in part by H3C. For example, HPE offers an HPE Certification to HPE employees, customers, and partners that teaches how to "design, implement, and configure complex data center solutions based on the HPE FlexNetwork Architecture."[12]

23.     As of August 2020, HPE advertised at least fifteen public job postings for positions at HPE's Austin, Texas office.[13]

### COUNT I
### Infringement of U.S. Patent No. 7,443,832

24.     Brazos re-alleges and incorporates by reference the preceding paragraphs 1–23 of this Complaint.

25.     On October 28, 2008, the U.S. Patent & Trademark Office duly and legally issued the '832 Patent, entitled "Device for Determining Switching Paths in a Label Switched Communication Network in the Presence of Selection Attributes." A true and correct copy of the '832 Patent is attached as Exhibit A to this Complaint.

26.     The '832 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

27.     Brazos is the owner of all rights, title, and interest in and to the '832 Patent, including the right to assert all causes of action arising under the '832 Patent and the right to any remedies for the infringement of the '832 Patent, including the exclusive right to recover for past infringement.

---

[12] *See* https://certification-learning.hpe.com/TR/datacard/Course/00908176.

[13] *See* https://www.linkedin.com/jobs/search?keywords=Hewlett%20Packard%20Enterprise&location=Austin%2C%20Texas%2C%20United%20States (printout attached as Exhibit D).

28.     The Accused Products that infringe at least one claim of the '832 Patent include but are not limited to HPE's routers and switches that support multiprotocol label switching ("MPLS") services and transmit data through label switch paths in a network of label switched routers, including, but not limited to, the HPE HSR6800 Router Series,[14] HPE A880 Router Series,[15] and the HPE 5820X Switch Series[16] (collectively, the "Accused Products").

29.     Upon information and belief, HPE and/or H3C make, use, sell, offer for sale, import, and/or distribute the Accused Products in the United States, including within this Judicial District.

30.     Upon information and belief, the Accused Products also include products designed and developed by H3C, alone or together with HPE. Such products include but are not limited to HPE HSR 6800 Series routers, HPE 6125XLG Ethernet Blade Series switches, HPE FlexFabric 5980 Series switches (48SFP+ 6QSFP28), HPE FlexFabric 5940 Series switches, HPE FlexFabric 5950 Series switches, HPE FlexFabric 12900E Series switches, HPE FlexFabric 5945 Series switches, HPE FlexNetwork 5510 HI Series switches, HPE Moonshot-16SFP+ Uplink Module, and HPE FlexNetwork 10500 Series switches.

31.     The Accused Products contain each element of and infringe exemplary claim 1 of the '832 Patent, which recites:

> A device for determining labeled data stream switchpath(s) in a label switched communication network comprising a multiplicity of label switched routers (LSR), each stream being associated with a chosen forwarding equivalence class and with a chosen set of service data, which device comprises:

---

[14] *See* https://buy.hpe.com/us/en/networking/routers/modular-ethernet-routers/6800-router-products/hpe-flexnetwork-hsr6800-router-series/p/5365643; *see also* https://support.hpe.com/hpesc/public/docDisplay?docId=c04111425.

[15] *See* https://support.hpe.com/hpesc/public/docDisplay?docId=c03146700.

[16] *See* https://support.hpe.com/hpesc/public/docDisplay?docId=c02680203.

a memory means for storing a table of correspondences between sets of service data and information data representative of at least two chosen criteria and a descriptive structure containing information data representative of a state of utilization and of a topology of the network, and

a processing means for:

a)  receiving a path set-up request containing a set of service data associated with a stream to be switched, and for determining in said table at least two criteria stored in corresponding relationship to said set of service data associated with the stream,

b)  ensuring the connectivity of said multiplicity of label switched routers, on the basis of information data stored in said descriptive structure,

c)  calculating from among said label switch routers possible paths between a departure node and a destination node taking account of at least one of said two criteria that have been determined and then deducing an ideal solution from performances of said possible paths on at least one of said criteria,

d)  assigning each possible path an interest value taking account of said ideal solution and then classifying said possible paths taking account their respective interest values, and

e)  selecting a path from among said classified possible paths and then associating with said stream to be switched a label representative of said selected path so that said labeled stream is switched via said path to the destination node.

32.    The Accused Products "are built with a multi-core distributed processing architecture that scales up to 420 Mbps forwarding and up to 2 Tbps switch capacity. They deliver robust routing (MPLS, IPv4, IPv6, dynamic routing, nested QoS), security (stateful firewall, IPSec/Dynamic VPN, DoS protection, NAT), full Layer 2 switching, traffic analysis

capabilities, and high-density 10GbE (and 40/100GbE-ready) WAN interface options, all integrated in a single powerful routing platform."[17]

33.     Each of the Accused Products is a device for determining labeled data stream switch path(s) in a label switched communication network comprising a multiplicity of label switched routers (LSR), each stream being associated with a chosen forwarding equivalence class and with a chosen set of service data.

34.     The Accused Products establish label-switched paths ("LSPs") for a stream associated with a Forwarding Equivalence Class in a network of LSRs. They store the correspondences between sets of service data and information data representing the chosen criteria and a descriptive structure containing information data representative of the state of utilization and of a topology of the network.

35.     The Accused Products receive a path set-up request containing a set of service data associated with the stream and to determine criteria stored in the corresponding relationship to the set of service data. They deduce an ideal solution from performances of possible paths on at least one of criteria. The Accused Products deduce an interest value to the paths considering the ideal solution and classifying the possible paths based on the respective interest value. The Accused Products further select a path from the possible paths and then switching the stream of data to the selected path.

36.     Each of the Accused Products acts as a device for determining labeled data stream switch path(s) in a label switched communication network comprising a multiplicity of LSRs, each stream being associated with a chosen forwarding equivalence class and with a chosen set

---

[17] *See* https://h50146.www5.hpe.com/products/networking/datasheet/
HP_HSR6800_Router_Series_J.pdf.

of service data. HPE's Accused Products provide a feature of configuring MPLS.[18] Data

transmission in MPLS occurs by the establishment of LSPs through multiple LSRs as shown in

Figure A below.[19] The Accused Products provide a feature of configuring Constraint-Based

Label Switched Paths ("CR-LSPs") that is used to determine an LSP in a network of LSRs. The

LSP is calculated taking into consideration a set of service data and is associated with a

Forwarding Equivalent Class ("FEC").[20]



Figure A

37.     Each of the Accused Products comprises a memory means for storing a table of

correspondences between sets of service data and information data representative of at least two

chosen criteria and a descriptive structure containing information data representative of a state of

utilization and of a topology of the network.

38.     The Traffic Engineering ("TE") Database ("TEDB") is formed by collecting TE

attributes of all the links.[21] TE attributes include the information data representative of the

chosen criteria of the link.[22] The association of links with the attributes (*i.e.*, service data and the

information data representative of the chosen criteria) is stored in TEDB. CR-LSPs are

established taking the routing information into consideration, where the routing information

---

[18] *See* https://support.hpe.com/hpsc/doc/public/display?docId=c04093643 at 9.

[19] *See* https://support.hpe.com/hpesc/public/docDisplay?docId=c04093643 at 2.

[20] *See* https://support.hpe.com/hpesc/public/docDisplay?docId=c04093643 at 48.

[21] *See* https://support.hpe.com/hpsc/doc/public/display?docId=c04093643 at 47.

[22] *Id.*

corresponds to the topology of the network.[23] The data stored in TEBD contains information related to the topology of the network, such as working conditions and available links.[24]

39.     Each of the Accused Products comprises a processing means for receiving a path set-up request containing a set of service data associated with a stream to be switched, and for determining in said table at least two criteria stored in corresponding relationship to said set of service data associated with the stream.

40.     The Accused Products provide a feature of Dynamic CR-LSP establishment. Dynamic CR-LSP is established taking into consideration the service data (*i.e.*, the QoS parameters) associated with the traffic. The Dynamic CR-LSP calculates the path based on the constraints stored in TEDB, and MPLS TE uses the Constraint-based Shortest Path First (CSPF) algorithm to calculate the shortest, constraint-compliant path to the tunnel destination.[25] Dynamic CR-LSP optimization calculates for paths that traffic trunks traverse, which sets up a path if an alternative better path is found. The path set-up request is sent for the new route to set up and replace the old route.[26] CSPF prunes TE constraint-incompliant links from the TEDB. TE constraints that are considered by CSPF to calculate the path include the service data (*i.e.*, QoS parameters, etc.) and the criteria (*i.e.*, bandwidth, affinity, setup and holding priorities, explicit path, etc.).[27]

---

[23] *See* https://support.hpe.com/hpsc/doc/public/display?docId=c04093643 at 48.

[24] *See* https://support.hpe.com/hpsc/doc/public/display?docId=c04093643 at 78 (configuring the failed link timer).

[25] *See* https://techhub.hpe.com/eginfolib/networking/docs/switches/7500/5200-1944a_mpls_cg/content/495507539.htm at 1; *see also* https://support.hpe.com/hpesc/public/docDisplay?docId=c04093643 at 54–56.

[26] *See* https://support.hpe.com/hpsc/doc/public/display?docId=c04093643 at 49.

[27] *See* https://techhub.hpe.com/eginfolib/networking/docs/switches/7500/5200-1944a_mpls_cg/content/495507539.htm at 1; *see also* https://support.hpe.com/hpesc/public/docDisplay?docId=c04093643 at 54–56.

41.     The processing means of the Accused Products ensures the connectivity of said multiplicity of label switched routers, on the basis of information data stored in the descriptive structure.

42.     The Accused Products provide a feature of configuring a failed link timer.[28] The state of the link is maintained in the database (*i.e.*, stored in TEDB). The information is used to ensure the connectivity of the multiplicity of LSRs. *See* Figure B below.

Configuring the failed link timer

A CSPF failed link timer starts once a link goes down. If IGP removes or modifies the link before the timer expires, CSPF updates information about the link in TEDB and stops the timer. If IGP does not remove or modify the link before the timer expires, the state of the link in TEDB changes to up.

To configure failed link timer:

| Step | | Command | Remarks |
|------|--|---------|---------|
| 1. | Enter system view. | system-view | N/A |
| 2. | Enter MPLS view. | mpls | N/A |
| 3. | Configure the CSPF failed link timer. | mpls te cspf timer failed-link *timer-interval* | Optional. The default is 10 seconds. |

Figure B

43.     The processing means of the Accused Products calculates from among said label switch routers possible paths between a departure node and a destination node taking account of at least one of said two criteria that have been determined and then deduces an ideal solution from performances of said possible paths on at least one of said criteria.

44.     Dynamic CR-LSP calculates possible paths among LSRs from a departure node to a destination node taking into consideration TE attributes that include criteria such as bandwidth, affinity, setup and holding priority, explicit path, etc.[29] The possible paths are calculated by CSPF first pruning the TE constraint-incompliant links from the TEDB.[30] The shortest path

---

[28] *See* https://support.hpe.com/hpsc/doc/public/display?docId=c04093643 at 78.

[29] *See* https://techhub.hpe.com/eginfolib/networking/docs/switches/7500/5200-1944a_mpls_cg/ content/495507539.htm at 1; *see also* https://support.hpe.com/hpesc/public/docDisplay?docId= c04093643.

[30] *Id.*

among the determined paths is identified and a route is set up between a departure node and a destination node.[31] The CSPF algorithm calculates the shortest path taking into account the constraints (*i.e.*, attributes of TE).[32] CSPF deduces an ideal solution based on the constraints (*i.e.*, the criteria).[33] The ideal solution of the CSPF might contain multiple paths with the same metric as shown in Figure C below.[34]

## Configuring the tie breaker in CSPF

CSPF only calculates the shortest path to the end of a tunnel. If multiple paths are present with the same metric, only one of them is selected. Tie-breaking methods, in the descending order of selection priority, include: selecting a path with the lowest bandwidth usage ratio (the used bandwidth to the maximum reservable link bandwidth), selecting a path with the highest bandwidth usage ratio (the used bandwidth to the maximum reserved link bandwidth), and selecting a path randomly.

To configure the CSPF tie-breaking method:

| Step | Command | Remarks |
|------|---------|---------|
| 1.   Enter system view. | system-view | N/A |
| 2.   Enter MPLS view. | mpls | N/A |

Figure C

45.     The processing means of the Accused Products assigns each possible path an interest value taking account of the ideal solution and then classifying said possible paths taking account their respective interest values.[35]

46.     The processing means of the Accused Products selects a path from among the classified possible paths and then associates with said stream to be switched to a label representative of said selected path so that the labeled stream is switched via said path to the destination node. CSPF calculates the shortest path between the departure node and a destination node. When multiple paths are present with the same metric a tie-breaking method is used and

---

[31] *Id*.

[32] *See* https://support.hpe.com/hpsc/doc/public/display?docId=c04093643 at 71.

[33] *Id*.

[34] *Id*.

[35] *Id*.

based on the interest values the paths are classified.[36] A path from the classified paths is selected

and the services (*i.e.*, the stream) are switched to the new path.[37] After the path is determined, a

label distribution protocol (LDP) advertises labels and reserve the resources on each node along

the calculated path and the stream is switched via the path to the destination node.[38]

47.     In view of the preceding paragraphs 31–46, the Accused Products contain each

and every element of at least claim 1 of the '832 Patent.

48.     Defendants have infringed, and continue to directly infringe, at least one claim of

the '832 Patent, including at least claim 1, literally or under the doctrine of equivalents, by

making, using, selling, offering for sale, importing, and/or distributing the Accused Products in

the United States, including within this Judicial District, without the authority of Brazos. HPE's

infringing use of the Accused Products includes its internal use, testing, demonstration and/or

configuration of the Accused Products.

49.     For example, upon information and belief, as part of HPE's business, HPE offers,

for a fee, training and certification programs to its employees, customers, and partners that

promote the Accused Products and teach how to use and/or implement the Accused Products.

Upon information and belief, HPE, while teaching others how to use and/or implement the

Accused Products, performs demonstrations, and in so doing, uses the Accused Products.

50.     As of the date of service of the initial complaint, August 18, 2020, HPE has had

actual or constructive knowledge of the '832 Patent and has been on notice of its infringement of

the '832 Patent and of how the accused products infringe the '832 Patent. Notwithstanding this

---

[36] *See* https://support.hpe.com/hpsc/doc/public/display?docId=c04093643 at 71.

[37] *See* https://support.hpe.com/hpsc/doc/public/display?docId=c04093643 at 49.

[38] *See* https://techhub.hpe.com/eginfolib/networking/docs/switches/7500/5200-1944a_mpls_cg/ content/495507539.htm at 1; *see also* https://support.hpe.com/hpesc/public/docDisplay?docId= c04093643 at 54–56.

knowledge and notice, since that time, HPE has continued to infringe the '832 Patent, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States.

51.     Upon information and belief, H3C has had actual or constructive knowledge of the '832 Patent and has been on notice of its infringement of the '832 Patent and how the Accused Products infringe the '832 Patent since sometime between the date of service of the initial complaint on HPE and June 4, 2021 when Brazos requested review of the source code for the Accused Products. Notwithstanding this knowledge and notice, since that time, H3C has continued to infringe the '832 Patent, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States.

52.     Since at least the date of service of the initial complaint for HPE, and at least June 2021 for H3C, through their actions, Defendants, with knowledge of the '832 Patent, have actively and knowingly induced customers, product makers, distributors, retailers, and/or end users of the Accused Products to directly infringe one or more claims of the '832 Patent throughout the United States, including within this Judicial District. The Accused Products, as provided to Defendants' customers and end-users and used as intended and instructed, infringe the '832 Patent. Defendants were and are aware that the Accused Products contain each element of at least claim 1 of the '832 Patent, and that the normal and customary use by end users of the Accused Products infringes the '832 Patent. Upon information and belief, Defendants' customers and end-users have directly infringed, and continue to directly infringe, at least by purchasing and using, selling, and/or offering for sale one or more Accused Products in the United States. Despite Defendants' knowledge of the '832 Patent and knowledge and/or willful blindness that their actions induce infringement by customers and/or end-users, Defendants have made, sold

and/or offered for sale the Accused Products, and are continuing to do so, with the specific intent to actively encourage customers and/or end-users to purchase and use, sell, and/or offer to sell one or more Accused Products in a manner that Defendants know to be infringing.

53.     Moreover, Defendants have taken and continue to take active steps to induce infringement of at least claim 1 of the '832 Patent, knowing that those steps will induce, encourage, and facilitate direct infringement by customers, product makers, distributors, retailers, and/or end users. Upon information and belief, such active steps include making or selling the accused products outside of the United States for importation into or sale in the United States, and directing, facilitating, or influencing its or their intermediaries, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or their behalf, to import, sell, or offer to sell the accused products in an infringing manner. Defendants also direct, control, and/or encourage customers' and/or end-users' to purchase and use and/or sell the Accused Products by taking active steps that include, but are not limited to: making, using, configuring, and selling the Accused Products; instructing end-users to use the Accused Products; creating and disseminating advertising and promotional materials that encourage the use of the Accused Products, including product descriptions, operating manuals, configuration guides, support materials, technical materials, and other instructions on how to use and/or implement the Accused Products; and providing training and certification programs that teach about the features of the Accused Products and demonstrate how to use and/or implement the Accused Products. Defendants have known that such activities induce end-users to infringe at least claim 1 of the '832 Patent since the date of service of the initial complaint for HPE and at least June 2021 for H3C.

54.     Examples of Defendants' manuals, instructional and support materials, and/or configuration guides for the Accused Products, provided by Defendants on their websites, that promote the sale and use of the Accused Products, and teach and instruct end-users on how to use and/or configure the Accused Products, include but not are not limited to:

- https://support.hpe.com/hpesc/public/km/search#q=MPLS;

- https://support.hpe.com/hpesc/public/docDisplay?docId=emr_na-c03732751;

- https://support.hpe.com/hpesc/public/docDisplay?docId=emr_na-c02676689;

- https://support.hpe.com/hpesc/public/docDisplay?docId=emr_na-c02647480;

- https://www.h3c.com/en/Support/Resource_Center/Technical_Documents/Routers/; and

- https://www.h3c.com/en/Support/Resource_Center/Technical_Documents/Switches/.

55.     Defendants' inducement is ongoing. Defendants have continued to induce direct infringement by others, including by promoting the sale and use of the Accused Products, even after being put on actual notice of the infringement of the '832 Patent.

56.     Since the date of service of the initial complaint for HPE, and at least June 2021 for H3C, through their actions, Defendants have contributed to, and are contributing to, the infringement of the '832 Patent by having others, including HPE with respect to H3C, sell, offer for sale, or use the Accused Products throughout the United States, including within this Judicial District, with knowledge that the Accused Products infringe the '832 Patent. Defendants have made and/or sold the Accused Products with knowledge that they have special features that are especially made or adapted for infringing the '832 Patent and are not staple articles of commerce suitable for substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least claim 1 of the '832 Patent.

57.    The special features include MPLS services and transmission of data through label switched paths in a network of label switched routers in a manner that infringes the '832 Patent.

58.    The special features constitute a material part of the invention of one or more claims of the '832 Patent and are not staple articles of commerce suitable for substantial non-infringing uses. The Accused Products have no substantial non-infringing uses.

59.    Defendants' direct and indirect infringement have caused, and are continuing to cause, injury to Brazos.

60.    Brazos has suffered damages as a result of Defendants' direct and indirect infringement of the '832 Patent in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

## JURY DEMAND

Brazos hereby demands a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Brazos respectfully requests that the Court:

(a)    enter judgment that Defendants infringe one or more claims of the '832 Patent literally and/or under the doctrine of equivalents;

(b)    enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '832 Patent;

(c)    enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '832 Patent;

(d)    award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for

the infringement by Defendants of the '832 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(e)      declare this case exceptional pursuant to 35 U.S.C. § 285; and

(f)      award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Respectfully submitted,

Dated: August 25, 2021

*/s/ Raymond W. Mort, III*
Raymond W. Mort, III
raymort@austinlaw.com
THE MORT LAW FIRM, PLLC
100 Congress Avenue, Suite 2000
Austin, Texas 78701
tel/fax: (512) 677-6825

David M. Stein
Texas State Bar No. 797494
dstein@brownrudnick.com
Sarah G. Hartman
California State Bar No. 281751
shartman@brownrudnick.com
BROWN RUDNICK LLP
2211 Michelson Drive, 7th Floor
Irvine, California 92612
telephone:   (949) 752-7100
facsimile:   (949) 252-1514

Alessandra C. Messing
New York State Bar No. 5040019
amessing@brownrudnick.com
Timothy J. Rousseau
New York State Bar No. 4698742
trousseau@brownrudnick.com
BROWN RUDNICK LLP
7 Times Square
New York, New York 10036
telephone:   (212) 209-4800
facsimile:   (212) 209-4801

Edward J. Naughton
(admitted *pro hac vice*)
enaughton@brownrudnick.com
Rebecca MacDowell Lecaroz
(admitted *pro hac vice*)
rlecaroz@brownrudnick.com
BROWN RUDNICK LLP
One Financial Center
Boston, Massachusetts 02111
telephone:   (617) 856-8200
facsimile:      (617) 856-8201

*Counsel for Plaintiff*
*WSOU Investments, LLC d/b/a*
*Brazos Licensing and Development*