# EXHIBIT Q

```
                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE WESTERN DISTRICT OF TEXAS
                             WACO DIVISION

WSOU INVESTMENTS LLC              *     November 23, 2021
                                  *
VS.                               *     CIVIL ACTION NOS.
                                  *
HEWLETT PACKARD ENTERPRISE CO.  W-20-CV-725 thru 730, 783

                BEFORE THE HONORABLE ALAN D ALBRIGHT
                     MARKMAN HEARING (via Zoom)

APPEARANCES:

For the Plaintiff:        Timothy J. Rousseau, Esq.
                          Brown Rudnick LLP
                          Seven Times Square
                          New York, NY 10036

                          Sarah Gabrielle Hartman, Esq.
                          David M. Stein, Esq.
                          Brown Rudnick LLP
                          2211 Michelson Drive
                          Irvine, CA 92612

                          Raymond W Mort III, Esq.
                          The Mort Law Firm, PLLC
                          100 Congress Ave, Suite 2000
                          Austin, TX 78701

For the Defendant:        Michael R. Franzinger, Esq.
                          Sidley Austin LLP
                          1501 K Street, N.W.
                          Washington, DC 20005

                          Barry K. Shelton, Esq.
                          Shelton Coburn LLP
                          311 RR 620 S, Suite 205
                          Austin, TX 78734-4775

Court Reporter:           Kristie M. Davis, CRR, RMR
                          PO Box 20994
                          Waco, Texas 76702-0994
                          (254) 340-6114

     Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.
```

1           (November 23, 2020, 1:37 p.m.)

2           DEPUTY CLERK:  Telephonic scheduling conference in Civil

3  Actions 6:20-CV-725, 726, 727, 728, 729, 730 and 783, all

4  styled WSOU Investments LLC versus Hewlett Packard Enterprise.

5           THE COURT:  Good afternoon.  If I could hear announcements

6  from counsel starting with the plaintiff.

7           MR. STEIN:  Good afternoon, Your Honor.  David Stein from

8  Brown Rudnick for the plaintiff.

9           THE COURT:  Good afternoon.

10          MS. HARTMAN:  Good afternoon, Your Honor.  Sarah Hartman

11 from Brown Rudnick for the plaintiff.

12          MR. ROUSSEAU:  Good afternoon, Your Honor.  Timothy

13 Rousseau also from Brown Rudnick on behalf of the plaintiff.

14          THE COURT:  Okay.  Anyone else for plaintiff?

15          MR. MORT:  Yeah.  This is Ray Mort.  I'm also on the line.

16          THE COURT:  Hello, Mr. Mort.

17          MR. MORT:  How are you doing?

18          THE COURT:  I'm well.  Thanks.

19          And for defendant?

20          MR. FRANZINGER:  This is Mike Franzinger from Sidley

21 Austin on behalf of Defendant HP Enterprise.

22          THE COURT:  Good afternoon to you, sir.

23          Anyone else going to be speaking?

24          MR. SHELTON:  Not speaking, Your Honor, but Barry Shelton

25 is on as well for HP.

1       THE COURT:  Very good.  Okay.  What is it that we need to
2   take up?  I'll start with the plaintiff.
3       MS. HARTMAN:  Your Honor, this is Sarah Hartman speaking.
4       We had a couple of issues that we've outlined in our
5   report that we just wanted to discuss today, and the first is
6   that defendant has asked for some pre-Markman discovery and we
7   have -- as we've stated in here, we disagree that any such
8   discovery is necessary.  They really haven't articulated what
9   they need, including what they would need in an
10  international -- from international discovery or what they need
11  it for.  So we do think it's premature and should be stayed
12  until factual discovery opens.
13      THE COURT:  Okay.  And in response?
14      MR. FRANZINGER:  Your Honor, HPE expects to raise a
15  jurisdictional issue of standing, and the public assignment
16  records seem to indicate at least that the plaintiff lacks the
17  right to sue for past damages.  Also the assignment records
18  mention things like encumbrances and retained rights that the
19  assignments are subject to.  They don't necessarily specify
20  what those are in the public documents.  So we think these
21  limit -- at least limit the plaintiff's standing here and we
22  need some discovery, some of which may be international, to
23  explore these issues and get the facts.  And the reason that
24  some of it may be international is that these patents have
25  variously passed through owners based in France, Finland and/or

1   Canada, and so we propose to get this discovery started
2   pre-Markman.
3       THE COURT:  Does the standing issue go only to the
4   potential for back damages, or does it go to the ability of the
5   plaintiffs to bring the suit at all?
6       MR. FRANZINGER:  It really depends on what the encumbrance
7   is and retained rights are as to the latter part of that
8   question.  So what we can see from the public documents is that
9   it would at least go to past damages.  There may be more in the
10  documents that aren't public.
11      THE COURT:  Okay. Well, I'd like you to give me a -- and
12  I'm probably going to allow the efforts to be made
13  internationally, but if you have some better good faith reason
14  to believe that you need these for standing sooner than when I
15  would ordinarily open up discovery, I'd like to hear it now.
16      MR. FRANZINGER:  The basis is just that the issue is
17  jurisdictional and may be dispositive of the case on the basis
18  that standing is always an issue jurisdictional.
19      THE COURT:  Well, sure, but I'm saying, do you have any
20  reason -- do you have any evidence to believe that standing to
21  bring the suit is an issue or not?  Do you have any good faith
22  reason that you would be able to raise that now?
23      MR. FRANZINGER:  The reasons would simply be as stated,
24  that the assignment records do mention that the assignments are
25  subject to encumbrances and retained rights by prior owners,

1    and we need the discovery to explore whether those issues
2    prevent the plaintiff from having standing to bring suit at
3    all.
4         THE COURT:  Okay.  And response from the plaintiff,
5    please?
6         MS. HARTMAN:  Your Honor, this is Sarah Hartman again.
7         We believe that we've had conversations and shown
8    documents and the assignments to HPE enough to show them that
9    this is -- the case is probably broad and that there's no
10   jurisdictional standing issue.  We also just don't see still
11   how -- what exact international discovery they intend to seek
12   to explore that further.  They just haven't been able to
13   articulate that.
14        THE COURT:  Well, okay.  So I am typically completely okay
15   with either side beginning the process now of obtaining
16   international discovery because I know how long that takes.
17   But I can't really tell -- I'll tell you what I'm hearing is
18   that the defendant feels that there is discovery that needs to
19   be taken and the plaintiff is telling me they're unsure exactly
20   what that international discovery is.
21        So let me ask counsel for HP, have you specified to the
22   plaintiff exactly what discovery it is you would seek to take
23   if I allowed you to do it right now that was international?
24        MR. FRANZINGER:  Your Honor, what we've described is at
25   least we want to get into the documents that relate to these

1  transfers of rights from one prior owner to another.  In many
2  instances these are not the direct transfer from the most
3  recent owner to the plaintiff here but an earlier transfer of
4  rights before that between one or more of the foreign entities
5  in the countries that I mentioned.  And the rights that are
6  transferred to the plaintiff can be no greater than the rights
7  that were transferred to the prior owner, and so that's where
8  we want to get documents that we think reflect agreements
9  regarding those transfers that we believe could show the issues
10 that we're attempting to show here.
11      THE COURT:  Okay.  I'm going to start off by doing this,
12 but this may not accomplish global peace.  It sounds to me like
13 the defendant has not quite yet articulated specifically to the
14 plaintiff what it is that they are seeking.  I understand the
15 bucket that you're seeking, but I'm not sure that you have
16 provided to the plaintiff the exact documents that you're
17 seeking.  It seems to me, first, that if the plaintiff has any
18 document -- let me try -- start -- go about it like this.
19      First, if the plaintiff has any documents that go -- that
20 trace back the assignments or transfer or anything that would
21 be related to standing in this case, if the plaintiff has those
22 in its possession -- and by standing I mean something that
23 would affect my jurisdiction to handle the case at all, not
24 just with regard to damages but jurisdiction, then I want the
25 plaintiff to produce those documents now because if they're in

1  the plaintiff's possession, jurisdiction is obviously the first
2  thing I should take up.  If -- but what I'm going to do is
3  this.  Generally speaking, I am okay with either party taking
4  international discovery because it takes awhile to get that
5  done and I want it to be gotten done.  I'll -- and HP counsel
6  send to the plaintiff the specific discovery that you want to
7  send out to international targets.  I'll allow the plaintiffs,
8  once they receive that specific discovery that HP would like to
9  send, if you have some reason to believe it's not discovery
10 that would go towards the jurisdictional standing -- your
11 jurisdictional standing to bring this case in my court or in
12 the United States, then let my clerks know and we can take up
13 any specific issue with respect to that topic.  Otherwise, I am
14 okay with HP moving forward and sending out discovery that will
15 get the process started of obtaining these documents as soon as
16 they can.
17     Let me start with HP's counsel.  Is that a good first
18 step, or is there something more you think I ought to do now
19 that would help you?
20     MR. FRANZINGER:  Your Honor, I think that's a good step to
21 go forward at this point.
22     THE COURT:  And counsel for plaintiff?
23     MR. SHELTON:  Your Honor, I'm sorry to interrupt you.
24 This is Barry Shelton.
25     If I could just add one more note here.  I just wanted to

1   remind Your Honor that in the other WSOU cases that are handled
2   by a different law firm by the Etheridge Law Firm, Your Honor
3   has granted blanket pre-approval for foreign discovery as long
4   as that discovery was not received before the date of the
5   Markman hearing, and I understand Your Honor's ruling and that
6   makes perfect sense, but I just wanted to remind the Court
7   that in the other cases that there have already been, you know,
8   a large number of letters of request that have been approved by
9   the Court.
10          THE COURT:  All right.  Well, here's what I'm trying to
11  accomplish, and I would like you all to do the best you can to
12  help me accomplish this.  I am sympathetic on the one hand to
13  HP getting this process started in a way that will get them --
14  will ensure that they have -- they have this information.  I am
15  also sympathetic to my general standing rule that I don't allow
16  discovery prior to the Markman.  So I am -- Mr. Shelton, I'm
17  happy for you to be involved in tailoring an agreement that's
18  similar to the other cases or any method you all want to where
19  you can come up by agreement with something that accomplishes
20  those dual objectives on my part.  I don't really care what you
21  all work out.  I do want HP to be able to begin the process now
22  with international third parties, but I don't want actual
23  discovery to take place until the Markman.  So if you all think
24  you can, with those parameters, work this out, great.  Try.  If
25  you can't and there's some specific issue I can take up with

1    you, I'll do that whenever you call back.

2            Does that -- again let me start over.  Does that work for

3    HP?

4            MR. FRANZINGER:  Yes.  That works, Your Honor.

5            THE COURT:  And for plaintiff?

6            MS. HARTMAN:  Yes, Your Honor.  Thank you.  That works for

7    us.

8            THE COURT:  Okay.  Any other issues we need to take up?

9            MR. ROUSSEAU:  Your Honor, this is Timothy Rousseau on

10   behalf of plaintiff.  So there was one other disputed issue

11   that we wanted to raise, and that has to do with discovery

12   limits.

13           THE COURT:  Okay.

14           MR. ROUSSEAU:  HP has requested that all seven cases be

15   tried within the number of discovery requests that the Court

16   usually allocates to a single case, and we believe that that

17   would be overly narrow.  These are seven separate cases on

18   seven separate unrelated patents, and we believe that limiting

19   discovery to the amount of requests typically reserved for a

20   single case would be overly limited.  In the interest of some

21   efficiency, WSOU has proposed a similar scheme that was agreed

22   to between the parties in the WSOU v. Huawei case in which

23   there are some number of common requests and some number of

24   case specific requests.  We believe that a situation like that

25   would be more appropriate.

1  THE COURT: That at a macro level makes sense to me that
2  there will be common questions and then there will be
3  individual questions related to each of the -- I'm assuming --
4  I think I've talked to Josh about this, but essentially
5  whatever number of cases you have against HP that each one has
6  a single patent; is that correct?
7  MR. ROUSSEAU: That is exactly right, Your Honor.
8  THE COURT: Okay. So essentially what you're suggesting I
9  do is if there are -- there would be a number of common
10 interrogatories, I guess, but then there would be specific
11 interrogatories or requests for production that you'd want to
12 ask that would deal with each of the individual
13 interrogatory -- individual patents. I don't have a problem
14 with that. Let me hear from HP.
15 MR. FRANZINGER: Your Honor, we've given this issue more
16 consideration and we're willing to agree to the discovery
17 limits that the plaintiff proposed.
18 THE COURT: Okay. And let me tell you all how I tend to
19 handle things like this or like the number of hours for experts
20 or, you know, all the other stuff. I'm blessed in this job
21 because I have really good lawyers 98 percent of the time or
22 higher on both sides. And so if either side comes to me and
23 says, we messed up when we agreed that we would have X number
24 of interrogatories, that was too few, we need three or four, or
25 whatever it is, more and let us explain to you why, you can

1 expect I'm going to grant that. If someone -- if you all
2 agree -- and I'm just picking a number. You shouldn't take any
3 meaning out of this, but if you agree that the number of hours
4 for expert deposition is going to be limited to 70 hours, just
5 to pick a random number, and someone gets to 69 and can show me
6 that the depositions they've taken were all of 30(b)(6) people
7 and relevant witnesses and they need more time, you should
8 anticipate I'm going to give more time. So -- and that's
9 bilateral. That's not for one side or the other. So do the
10 best you can to come up with these type of agreements and to
11 live up to them, but understand that as long as someone can
12 come in and show that they acted in good faith in trying to
13 adhere to these limits and they need some increase in them for
14 some specific reason to either on the plaintiff's side prepare
15 to prosecute its case or the defense side to defend the case,
16 you should anticipate I'm usually pretty receptive to that. So
17 I'm happy that you all have agreed. And is there anything else
18 that we need to take up? I'll start with the plaintiff.
19     MR. ROUSSEAU: Your Honor, those were the only disputed
20 issues.
21     THE COURT: Okay. And for HP?
22     MR. FRANZINGER: Your Honor, this is -- this is not a
23 disputed issue. This is an area of agreement, but we wanted to
24 get the Court's view on it. For the purpose of venue transfer
25 motions, we anticipate there's going to be a common factual

1   basis across some of the cases and we expect that we could
2   consolidate the seven to somewhere between one and three
3   motions that would cover all of them, and we just wanted to see
4   if the Court would prefer that we do it that way to avoid
5   duplication.  We're also willing to file duplicate ones in
6   different cases if the Court prefers that.
7       THE COURT:  I would much prefer you not duplicate it.
8   That would make me much happier.
9       MR. FRANZINGER:  Good.  Great.
10      THE COURT:  And however -- and you may have seen recently
11  I made a change to my general standing rules that the
12  plaintiff -- if a defendant files a motion to transfer, the
13  plaintiff essentially has unlimited discovery to prepare for
14  their response to a motion to transfer which doesn't really
15  affect what your issue was.  I just wanted to make sure
16  everyone was aware of that recent change.
17      MR. FRANZINGER:  Yes, Your Honor.  And also on the subject
18  of timing, with the period for filing going over Thanksgiving,
19  it's impairing the fact gathering process a little bit, but our
20  opposing counsel has graciously agreed to a two week extension
21  to the deadlines.  So the parties plan to put that in our
22  agreed upon proposed schedule that we'll hopefully have for
23  you.
24      THE COURT:  Well, they were probably aware I'm usually
25  really a difficult person to live with and get those agreements

1  from.  So you're probably lucky that they went so easy on you

2  because I -- I'm usually pretty strict about that kind of

3  stuff.

4       At any rate -- I was kidding.  Occasionally people don't

5  know if I'm kidding or not.

6       I think that's great.  I think it's great that you all

7  worked this out.

8       And so is there anything else we need to take up for HP?

9       MR. FRANZINGER:  No, Your Honor.

10      THE COURT:  Okay.  Well, I hope you all have a wonderful

11  week and a wonderful Thanksgiving and I hope I get to see some

12  or all of you in real life sometime before the end of 2021,

13  which I'm not sure about anymore.  So you all have a wonderful

14  week with your family.  Take care.  Bye.

15      (Hearing adjourned at 1:53.)

1 UNITED STATES DISTRICT COURT )

2 WESTERN DISTRICT OF TEXAS    )

3

4    I, Kristie M. Davis, Official Court Reporter for the

5 United States District Court, Western District of Texas, do

6 certify that the foregoing is a correct transcript from the

7 record of proceedings in the above-entitled matter.

8    I certify that the transcript fees and format comply with

9 those prescribed by the Court and Judicial Conference of the

10 United States.

11    Certified to by me this 15th day of October 2021.

12

13                      */s/ Kristie M. Davis*
                      KRISTIE M. DAVIS
                      Official Court Reporter

14                       800 Franklin Avenue
                      Waco, Texas 76701

15                       (254) 340-6114
                      kmdaviscsr@yahoo.com

16

17

18

19

20

21

22

23

24

25